HON. JOHN PIERPOINT,
HON. JAMES BARRETT,
HON. LOYAL C. KELLOGG,    } ASSISTANT JUDGES.
HON. ASAHEL PECK,
HON. WILLIAM C. WILSON,

---

GEORGE SPENCER AND OTHERS *v.* GUSTAVUS A. AUSTIN AND OTHERS.

[IN CHANCERY.]

*Tenancy in Common. Merger.*

The principal incidents attending a tenancy in common are such as merely arise from the unity of possession, therefore one tenant in common may convey his estate without the other, and resume it at any time, or they may unite in a common conveyance of their respective estates, without necessarily intermingling or prejudicing their separate rights or interests.

Spencer et al. *v.* Austin et al.

G. and S. were tenants in common of certain premises, and made a perpetual lease thereof to W., and assigned to W. certain rents issuing out of and chargeable upon certain other lands, all described and set forth in said lease, reserving rent, with right of re-entry for non-payment. Subsequently S. conveyed all his interest in the premises to A.; and subsequently to this conveyance W. assigned his interest in one undivided moiety of the same land to A. *Held,* that though these conveyances vested in A. the title to one undivided half of the premises, yet they did not necessarily operate as a merger of these estates in him so far as to extinguish his rights under the lease; that this would depend upon the intention of the parties.

*Held,* that under the circumstances the two estates, viz: that of S. reserved in the lease, and that of W. in S.'s moiety of the land, were united in A., and he became the owner of the moiety of S. and a tenant in common with G., with all the rights of property vested in him that were vested in S. at the date of the lease.

*Held,* therefore, that the defendants, who claim under A., are entitled to the free use and profits of A.'s moiety of the lands, and to an equal lien and charge for the rents of S. upon the property, in the same manner and to the same extent as the orators.

BILL IN CHANCERY. The orators, George Spencer, administrator of the estate of Gideon Spencer, Marshall S. Spencer, Louisa S. Russell, wife of Spencer Russell, and George Field allege that on the 15th of July, 1830, Gideon Spencer then in life, and Stephen Spencer, being seized and the owners in fee of certain real estate and property situated in Vergennes, by deed of indenture demised, leased and let to John D. Ward, so long as wood should grow and water run, said property; and also assigned to said Ward certain rents issuing out of and chargeable upon certain other lands,—all described and set forth in said indenture "A," for the yearly rent of $800., payable semi-annually, on the 15th days of April and October each year, upon condition of re-entry if at any time the said rent or any part thereof should remain due and unpaid for a longer term than one whole year next after the same should so become payable as aforesaid, and that in that case, said Gideon and Stephen, their heirs and assigns, should be reinstated in their right to receive the said rents so assigned by them to said Ward; that thereupon said Ward entered upon said demised premises, and took and received the said assigned rents, and he and his assigns thereof, as hereinafter mentioned, have since so continued; that on the 9th of May, 1833, Stephen Spencer assigned to Apollos Austin all his (Stephen's) right, title and interest in said deed of indenture; that on the 21st of September, 1836, said Ward conveyed and assigned to Henry Hewitt, William

H. White and the said Apollos Austin, the whole of his (Ward's) right, title and interest in and under said deed of indenture "A," and to the premises and rents therein described and conveyed; that on the 9th of October, 1838, the said Henry Hewitt conveyed all his said right, title and interest in said premises, lands and rents to the said William H. White and said Apollos Austin; that on the first day of March, 1837, the said William H. White conveyed to one Samuel Barker one undivided third part of the interest and right of said White in the lands, premises and rents conveyed to said White, Hewitt and Austin by said Ward as aforesaid; that on or about the 16th of July, 1847, the said Gideon Spencer died, seized and the lawful owner of the rights and interests in and to said property, created, reserved and provided unto him in the said deed of indenture to Ward, and that he left surviving him Eliza Robly, Laura Russell, children, and Marshall S. Spencer, Louisa S. Russell, Ann E. Rogers and Laura Rogers, grand children,—now Laura Gates and Ann E. Rogers; that on the 28th of September, 1853, the said Eliza Robly with her husband, Henry Robly, conveyed to the said William H. White, all their right title and interest in and to one eighth part of the said lands, premises and rents mentioned in said indenture "A," and whereof her father the said Gideon Spencer died seized, or to which he was at his said death entitled; that on the same 28th of September, 1853, the said Eliza Robly with her said husband conveyed to the said George Spencer all their remaining interest in said lands, premises and rents, being one eighth part of the rights of the said Gideon therein; that afterwards and on the 20th day of February, 1854, the said Wm. H. White conveyed to the orator George Field all his (said White's) interest in said lands, premises and rents derived by him as aforesaid from Eliza Robly and Henry Robly; that the deed from the Roblys to said White was made in the state of Iowa and sent to their agent in Vermont in the expectation that White would become the purchaser, but he finally declined to purchase or take the deed and the same remained in the hands of the agent, and he subsequently effected a sale of the property described in the said deed to said Field, and for the sake of convenience it was arranged that said deed should be delivered to White, and he at the same time execute a quit-claim deed of said premises to said Field, and that

Spencer et al. *v.* Austin et al.

Field should pay for the same directly to said agent, and the arrangement was so carried out, said White paying nothing to said agent; that on or about the        day of        , 18  , the said Marshall S. Spencer and Louisa Russell, the wife of the orator Spencer Russell, became by deeds from the said Laura Russell, Ann E. Rogers and Laura Rogers, now Laura Gates, the owners in fee of the right of said persons so conveying to them, in and to the lands, premises and rents mentioned in said indenture "A," to which said conveying persons became entitled as heirs-at-law of Gideon Spencer as aforesaid, so that the whole right and interest in said lands, premises and rents, whereof and whereto said Gideon Spencer died seized and entitled, have become vested in and are now owned by the said George Spencer, George Field, Marshall S. Spencer, and Louisa S. Russell; that on or about the first day of December, 1842, the said Apollos Austin died seized and the owner of the interests and rights in and to the said lands, premises and rents hereinbefore described as appertaining to him, and by the devises of the will of said Apollos and by the casting of descents, the same came to and are vested in Gutavus A. Austin, Charles L. Austin, John D. Hammond and Adelia A. Fletcher, in the proportions of two sixths to said Gustavus A., two sixths to said Charles L., one sixth to said John D., and one sixth to said Adelia A.; that on the first day of May, 1855, the said Gustavus A. Austin, Adelia A. Fletcher, J. D. Hammond, Samuel Barker, Charles L. Austin and William H. White, (uniting with Sally Austin and Champlin M. Fletcher,) by their deed of indenture of that date, made, executed and delivered by and between them of one part, and Wm. R. Bixby and Ira Bingham of the other part, demised and released to said Bixby and Bingham a certain part of said lands and premises therein described and set forth, assuming a certain rent therefor of $240. yearly, under which indenture said Bixby and Bingham entered and became possessed, and now hold possession of said part of said lands and premises themselves; that on the 24th of January, 1859, the said William H. White by his deed of indenture leased to John Goulait a certain other part of said land and premises, reserving a yearly rent of $15. thereon, under which demise said Goulait entered and became possessed, and still is possessed of the same; that the rents reserved to the lessors in and by

the deed of indenture to Ward, so far as they have accrued, and belong to the orators by virtue of the premises, have fallen in arrear and become due and unpaid, though demanded for more than one year before the fifteenth day of April, A. D. 1861, and a great arrear therefore has accumulated due in equity to the orators by virtue of the premises, to wit : more than the sum of two thousand dollars. And the orators insist that by means of the premises the one half of said required rent charged upon and issuing out of said lands and premises belonging originally to Stephen Spencer, has become extinguished in whole or in part, and that in equity the orators are entitled to have that moiety of said original rent to which said Gideon Spencer was entitled under said indenture "A," charged and made a lien upon the whole of said lands, premises and rents conveyed by said indenture "A," and that thus by the non-payment of their said rents, have become entitled in equity to a re-assignment by said White, Barber, Austins, Hammond and Fletcher, of the said rents transferred and assigned by force of said indenture "A" ; that said lands and premises consist, besides farm lands, of certain iron-works, forges, furnaces and appliances for working iron, and houses and tenements, all of which forges, furnaces and appliances, and many of said houses, are now and have long been suffered by said lessees to stand idle, and so to waste and decay, and the same are now rapidly becoming of less value from that cause, and the security of the orators in the premises is thereby becoming less, and their rights therein jeopardized ; and that rents are received by said White and Austin, or one of them, accruing out of said lands and premises or parts thereof, which, instead of being applied, as in equity they ought, to liquidate the orators' over-due rents, are used up and converted by said White or Austin, and thus the orators' interests are injured.

*Prayer* of the bill was that by a decree of court the respective interests of the orators and the said Austins, White, Hammond and Fletcher in the said premises, and in the said rents reserved in the said indenture to Ward, marked "A," may be declared ; and that the conveyance from White to the orator Field may be established and perfected ; and that the one equal moiety of said rents reserved and provided for in said indenture "A," may be declared to belong to the

orators. And that the same may be charged as a primary lien upon the whole of said lands and premises, and that an account may be taken of the amount of said rents now due and hereafter to become due to the orators in respect to said premises; and the same being ascertained, that the said Austins, White, Barker, Hammond, Fletcher, Bixby, Bingham and Goulait, may be decreed to pay the same to the orators by some.short day to be fixed by the court, and that in default thereof all right, title and interest of the said parties in and to the said lands and premises, and rents demised and assigned by said indenture "A" may be extinguished and forever foreclosed.

The defendants John D. Hammond, Adelia A. Fletcher and Chas. L. Austin in their answer denied that the orators were entitled to the relief prayed for, upon the facts set forth in the bill; denied that they had received any portion of rent paid to said White or G. A. Austin, and insisted that if said White and Austin had ever received any portion of the rents due Gideon Spencer or his assigns under said indenture "A" the orators are not entitled to have the same charged upon the whole of said lands as a primary lien. G. A. Austin also answered to the same effect. The orators replied, traversing the defendants' answers. The defendants filed a cross-bill seeking affirmative relief against White and Barker as well as the orators,—to which answer was made.

Upon the hearing at the Addison County Court the bill was dismissed, PIERPOINT, Chancellor,—from which the orators appealed.

*E. J. Phelps*, for the orators.

I. The complainants now hold, by regular and legal conveyances, all the right, title and interest in the premises and rent in question, originally held by Gideon Spencer as tenant in common with Stephen Spencer, subject to the lease to Ward.

II. The assignment from the lessor Stephen Spencer, of one-half the lessor's interest in the premises, and the conveyance from Ward of one-half the lessee's interest, operated as a merger of those estates in Apollos Austin, and vested in him the title to one undivided half, in fee. Washburn on Real Prop., ch. 1, § 20.

III. The merger and union of the estates of lessor and lessee in the undivided half of the premises, operated an extinguishment of

one-half the rent. Apollos Austin did not thereafter stand as the lessee of his own property, paying himself rent for the use of it. 1. The rent in question is a rent charge. 2 Cruise Dig. Tit. 28, ch. 1, § 8. 2. A rent charge may be divided, and by agreement of all parties, apportioned on the land. But in the absence of such an agreement, a release or a purchase by the owner of the rent, of *any* *part* of the land extinguishes the whole rent. *Rivis* v. *Watson*, 5 Mees. and Wels. 255 ; Washburn on Real Prop., ch. 1, § 18 ; *Bennet* v. *Pass*, 27 E. C. L. 432. 3. If, therefore, Apollos Austin had owned the whole rent when he purchased the undivided half of the land, the purchase would have extinguished the whole. The same consequences necessarily follow, as to so much of the rent as he did own, being one-half. As Gideon Spencer was no party to that purchase, and never assented to it, of course his half of the rent would not be affected.

IV. The extinguishment of one-half the rent, by the merger of the rights of the lessor and lessee, left the remaining half a charge upon the whole land. And no apportionment can be compelled as against Gideon Spencer, without his assent. Littleton, § 222 ; 2 Washburn on Real Prop., *ubi. sup.*, and ch. 1, § 19, note ; *Van Rensselaer* v. *Chadwick*, 22 N. Y. 32 ; same case, 24 Barb. 333. 1. This is precisely like the case of a mortgage of the land to secure the payment of a debt, or an annuity. If one-half is paid, discharged or extinguished, the entire security is holden for the balance. *Gates* v. *Adams*, 24 Vt. 74 ; *Howe* v. *Chittenden*, 1 Vt.

*J. W. Stewart* and *George F. Edmunds*, for the defendants.

Stephen and Gideon Spencer were, at the date of the lease to Ward, *tenants in common* of the land conveyed. This is stated in the bill, and asserted in the answer. *As such* they made the lease, and reserved the rent in question. The rent to which each lessor is entitled arises solely from the land or estate which passed to the lessee from him, and not in anywise from the estate, or as a consequence of the lease of the other. Before any conveyance by Ward, Austin succeeded to the title and right of Stephen Spencer, so that the case stands exactly as if Stephen Spencer had become the assignee of Ward, and he were now called upon to give up *his own* *land* to his brother, because there had been a *forfeiture* of the estate

conveyed by his brother to Ward! By the provisions of the lease itself non-payment of rent produces a *forfeiture* of the estate, (by whatever name we call it,) conveyed by the lease; and it is to enforce such forfeiture that this suit is brought. Now what is a forfeiture—whether of a term of years, or of a fee simple conditional, or any other estate? "Where a person enters for condition broken, the estate becomes void *ab initio;* the person who enters is again *seized of his original estate in the same manner as if he had never conveyed it away."* Lit. § 325; 1 Inst. 202, a; Cruise's Dig. B. 2, tit. Condition. Therefore, if the facts stated in the bill be true, the orators are seized of the original estate of Gideon Spencer as it was *before* the lease to Ward. That was certainly no interest in the moiety of Stephen Spencer, now held by the defendants.

As to the merger. At the former argument the orators' counsel styled the estate of the Spencers after the lease, a "rent charge" upon the land. Such a definition is totally inaccurate. A rent charge is a rent *granted* out of lands by him who is the owner thereof, with an *express* clause of distress, and it is called rent charge because the lands were charged with the distress, and the grantee, without the clause, had no right of distress, because there was no *fealty* annexed to the grant. 1 Inst. 143, b. And in this case, although. as has been sometimes said, the conveyance creates a *fee*, it does not create a *fee simple absolute*, (nothing short of which is the whole estate in land;) but it creates technically a fee farm rent, with a contingent reversion. Cruise's Dig., tit. Rents; *Bradbury* v. *Wright*, Doug. 624 and n. The estate therefore of Stephen Spencer, after the lease, was not a mere charge, incumbrance or lien to be extinguished; but it was the seignorial and dominant estate (as the early law writers would call it), out of which the estate of the tenant was carved, and to which it would revert on the contingency named. Thus the estate of the lessee was in a technical sense the particular or lesser estate; and therefore upon the unity of the estates in Austin, the estate of the lessee merged in the estate of the lessor; so that Austin became seized in fee simple absolute, just as Stephen Spencer would have been by a re-conveyance of a moiety to him by Ward. The mode of conveyance did *not*, like a mortgage, make *every part* of both estates conveyed, security for *each* part of

the rent *in solido ;* but from each of the estates conveyed arose the rent referable to that moiety in exactly the same way as if there had been two deeds to Ward instead of one. The merger therefore at law produced in Austin precisely the same estate as Stephen Spencer had ·before his conveyance to Ward ; and that certainly was not charged with any incumbrance or lien in favor of his co-tenant.

The evidence shows that it was not for the *interest* of Austin that a merger should occur, especially so if the orators' positions are sound. And the fact that the assignment of Ward was not to him alone, but to others also, for the purposes of trade, demonstrates that there could have been no *intention* to create a merger, thus complicating and splitting up the interest and rents. And this conclusion is fortified by the proof that Austin, after the assignment, continued to receive rents.

There can be no ground, then, in equity, upon which to deny to Austin either the free use and profit of his moiety of the lands, or an equal lien and charge for the Stephen Spencer rents, upon the property, in the same manner and to the same extent as the orators. *Slocum* v. *Catlin,* 22 Vt. 139 ; *Forbes* v. *Moffatt,* 18 Ves. 384 ; *Earl of Clarendon* v. *Borham,* 1 Y. & C. 688 ; *Faulkner* v. *Daniel,* 3 Hare, and American notes ; *Walker, Smith & Co.* v. *Baxter et al.,* 26 Vt. 710.

The opinion of the court was delivered by

WILSON, J. The orators seek to charge the whole land with the payment of the rent due to them as the assignees and representatives of Gideon Spencer, and whether they are entitled to the relief sought for depends upon the original rights of Gideon and Stephen Spencer as tenants in common of the land sought to be charged, and upon the legal effect of the several conveyances under which these parties respectively claim title to the premises. Gideon and Stephen Spencer were, at the date of the lease to Ward, tenants in common of the land conveyed. "The only unity required between tenants in common is that of possession, for one tenant may hold his part in fee simple, the other in tail or for life ; so that there is no unity of interest. One may hold by descent, the other by purchase ; so that there is no unity of title. One estate may have been vested fifty years, the other but yesterday ; so that there is no unity of time."

Litt. § 292 ; 1 Inst. 190 ; Cr. Dig. B. 2 tit. 20 ; 2 Black. Com. 191. "Joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession." Black. Com. 146. And among the incidents attending a joint tenancy is the doctrine or right of survivorship which does not exist in tenancy in common. The ancient English law was apt in its constructions of conveyances to favor joint tenancy rather than tenancy in common ; but joint tenancies, for a long period of time, have been and still are regarded with so little favor in England and in this country, both in courts of law and equity, that whenever the expressions will import an intention in favor of a tenancy in common, such effect will be given to them. Our legislature, for the purpose of protecting the several interests of persons in the same land, and guarding them against the incidents attending a joint tenancy and the injustice which might result therefrom, has declared that all conveyances and devises of lands made to two or more persons (except conveyances and devises made in trust, or made to husband and wife) shall be construed to create estates in common, and not in joint tenancy, unless it shall be expressed therein that the grantees or devisees shall take the lands jointly, or as joint tenants, or in joint tenancy, or to them and the survivor of them, or unless it shall manifestly appear from the tenor of the instrument that it was intended to create an estate in joint tenancy. G. S., ch. 64, §§ 2 and 3. The reason of the rule which protects the title and several interests of tenants in common, while they jointly possess the estate, each under his own absolute title to a moiety of the lands, may exist in case of a joint conveyance by them of part of their interest in the premises, and upon principle the rule should extend to and protect their reserved rights in the estate under such conveyance, and preserve them in severalty, so long as such relation exists, either in respect to the proceeds of the estate, or in respect to their reserved rights in the estate, unless the conveyance contain some express provision to the contrary. The principal incidents then attending a tenancy in common being such as merely arise from the unity of possession, it follows that one tenant in common may convey his estate without the other, and resume it at any time, or they may unite in a common conveyance of their respective

estates, without necessarily intermingling or prejudicing their separate rights or interests.

The two Spencers, holding by separate and independent titles, in 1830, by their joint deed, made the lease to Ward, reserving an annual rent of $800. The lease among other stipulations contained a clause of re-entry in case of non-payment of the rent. The rent was made payable in gross, but it belonged to each separately, in equal moieties, as tenants in common, in the same right as that in which they had held the land. By the terms of the lease neither Spencer released to the other any right to or interest in his moiety of the estate, nor in his security upon such moiety for his share of the rent. The joint lease of the Spencers to Ward did not in any manner affect their reserved rights as tenants in common. They were the same as if the lease to Ward had been made by two separate deeds of the Spencers, each of his own moiety, reserving rent, and a right of re-entry for condition broken. The lease gave neither of them any estate in, or control over the title or part of the other. Their reserved estate in the land was, in effect, several, their right to the rent several, and their right of re-entry for condition broken was several. And "where a person enters for condition broken the estate becomes void *ab initio*, and the person who enters is again seized of his original estate in the same manner as if he had never conveyed it away." Lit. § 325; 1 Inst. 202, a; Cruise's Dig. B. 2, tit. Condition. Stephen Spencer in 1833 conveyed his interest in the premises to Apollos Austin. He conveyed to Austin his moiety of the rent due and growing due, and his moiety of the land charged only with the payment of his part of the rent; by which Austin succeeded to the title and rights of Stephen Spencer which were co-extensive with the rights of Gideon Spencer. In 1836 Ward assigned his interest in one undivided moiety of the same land to Austin, by which Austin became seized of all the right and title to the moiety owned by Stephen Spencer at the time the lease was made by the Spencers to Ward. It is urged by the orators that the assignment from the lessor Stephen Spencer of one-half of the lessor's interest in the premises, and the conveyance from Ward of one-half of the lessee's interest, operated as a merger of these estates in Apollos Austin and vested in him the title to one undivided half,

Spencer et al. *v.* Austin et al.

in fee. It is true that those conveyances vested in Apollos Austin the title to one undivided half of the premises, but it did not necessarily follow that the conveyances operated as a merger of those estates in Austin, so far as to extinguish his rights under the lease. The question is upon the intention of Austin, in whom the interests were united ; and it appears to us that there could have been no intention to create a merger of the estates. In *Walker, Smith & Co.* v. *Barker & Fletcher,* 26 Vt. 710, it was held that the estates when united will not be treated as merged, so as to operate as payment or extinguishment of the debt, unless such was the evident intention of the parties, nor will that result follow if there exists some beneficial interest that should be protected, and where it is for the benefit of the party to keep the legal and equitable interests separate and distinct. And in the case of *Forbes* v. *Moffat,* 18 Vesey, 384, the rule was recognized that the whole question rests upon an expressed or presumed intention of the parties, and that the debt will be treated as paid and satisfied when it is evident that the estates were united with a view to satisfy the debt, otherwise it will have no such effect ; and such is the rule both at law and in equity. Under the circumstances we think the case stands the same as if Stephen Spencer had become the assignee of Ward. The two estates, viz : that of Stephen Spencer reserved in the lease, and that of Ward's in Stephen Spencer's moiety of the land, were united in Apollos Austin and he became the owner of the moiety of Stephen Spencer and a tenant in common with Gideon Spencer, with all the right of property vested in him that was vested in Stephen Spencer at the date of the lease. The right of Austin to the rent in arrear was not satisfied by the union of the two estates ; he still had a right to enjoy his moiety of the land, as well for the rent in arrear as for the accruing rent. Gideon Spencer, at the time of the execution of the lease by him and his co-tenant Stephen Spencer to Ward, had no title to or interest in Stephen Spencer's moiety of the premises, he derived none from the joint lease to Ward, nor from the subsequent assignment and conveyance by which Austin became the owner of Stephen Spencer's moiety of the premises ; and it is clear that Austin is entitled to the free use and profits of his moiety of the lands, and to an equal lien and charge for the Stephen Spencer rents, upon the property, in

the same manner and to the same extent as the orators. We are entirely satisfied with the result, for it appears to be in accordance with the intention and understanding of the parties as disclosed by the testimony in the case. It is not reasonable to suppose that the Spencers, by uniting in the execution of the lease to Ward, intended to affect their separate rights in the estate, or the rights of their grantees, nor will equity allow the orators to extend their security over the whole land when so manifestly contrary to the intention of the parties.

The decree of the chancellor, by which the orators' bill was dismissed, is affirmed with costs to the defendants.

The defendants by their cross-bill in this case seek affirmative relief against White and Barker as well as the orators, and we think defendants are entitled to relief in accordance with the prayer of their bill, and the case is remanded to the court of chancery with instructions that a decree be entered for the defendants in accordance with the views of this court above expressed.